UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HECTOR RAMOS,

       Plaintiff,

vs.                                  Case No.  8:11-cv-1942-T-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

       Defendant.

_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his applications for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff submitted applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on February 25, 2009, alleging an inability to work since September 18, 2007 (Tr. 107-114).  The Social Security Administration ("SSA") denied Plaintiff's initial applications on March 27, 2009, and Plaintiff's request for reconsideration was denied on October 5, 2009.  (Tr.81-86, 88-91).  On November 14, 2009, Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ") and his case was heard on January 4, 2011.  (Tr. 92-93, 28-50).  On February 24, 2011, the ALJ

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 12).

1

issued a decision finding Plaintiff not disabled.  (Tr.12-24).  Plaintiff requested review by the

Appeals Council, which was denied on June 22, 2011.  (Tr. 1-3).  Accordingly, the ALJ's

February 24, 2011 decision is the final decision of the Commissioner.  The Plaintiff timely

filed his Complaint in the United States District Court on August 26, 2011.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since September 18, 2007 due to back pain and

depression.  (Doc. 26, p. 3).

### B.    Summary of Evidence Before the ALJ

Plaintiff was born on November 25, 1970, and was forty years of age on the date the

ALJ's decision was rendered.  (Tr. 107, 111, 24).  He attended school in Puerto Rico

through the ninth grade and has past relevant work experience as an apartment

maintenance worker.  (Tr. 32-34, 126).  The following provides a brief summary of Plaintiff's

medical history.

On September 25, 2007, Plaintiff was admitted to the Doctor's Walk-In Clinic in West

Tampa where he was examined by Dr. John Kauzlarich.  (Tr. 166-167).  Plaintiff's chief

complaint was back pain, which began the previous week when Plaintiff lifted a water

heater.  (Tr. 166).  Plaintiff described his pain as a constant, cramping sensation and rated

its severity at seven out of ten.  Id.  Examination showed some paravertebral muscular

tightness in the lumbar region of Plaintiff's spine with decreased range of motion and

moderate pain, but x-rays did not reveal any acute injury.  (Tr. 167).  Plaintiff was diagnosed

with a lumbar sprain or strain and prescribed Motrin 800 mg to manage his pain.  Id.  Dr.

Kauzlarich directed Plaintiff to avoid pushing, pulling, or lifting more than fifteen pounds and

2

to return if his symptoms worsened, persisted, or changed.  Id.

On October 2, 2007, Plaintiff returned to the clinic and was examined by Dr. Elizabeth McVeigh.  (Tr. 168-169).  Plaintiff reported his pain had not improved due to the demands of his work, but medication provided some relief of his symptoms.  (Tr. 168).  Plaintiff described his pain as a constant, sharp sensation and rated its severity at six out of ten.  Id.  Examination showed a normal lumbar range of motion with full flexion, extension, and side bending.  Id.  Examination also showed some left tenderness and pain in Plaintiff's lumbar region with standing and an MRI revealed a small disc protrusion in the lumbar region of Plaintiff's spine.  Id.  Plaintiff was prescribed Robaxin 750 mg and encouraged to attend physical therapy three times per week to manage his pain.  (Tr. 169).  Dr. McVeigh indicated Plaintiff would need to sit for one half of his work day and stand for the other half.  Id.  Plaintiff was scheduled for another appointment on October 9, 2007 and told to return if his symptoms worsened, persisted, or changed.  Id.

On October 9, 2007, Plaintiff returned to the clinic and was examined again by Dr. Kauzlarich.  (Tr. 172-173).  Plaintiff reported that his pain had not improved since his first visit.  (Tr. 172).  Plaintiff described his pain as a stabbing sensation which worsened with bending or standing and its severity was rated at nine out of ten.  Id.  Dr. Kauzlarich was able to observe Plaintiff, without his knowledge, and noted that Plaintiff was moving from place to place with no apparent pain or other restriction and appeared to be malingering.  Id.  Dr. Kauzlarich also noted Plaintiff showed restrictions in movement during his musculoskeletal exam, but indicated the exam did not match Plaintiff's complaints.  (Tr. 173).  Dr. Kauzlarich referred Plaintiff to an orthopedist and restricted Plaintiff's work status

to lifting no more than seven and one half pounds.  Id.

On October 23, 2007, Plaintiff returned for a fourth visit to the Doctor's Walk-In Clinic and was examined by Dr. Kauzlarich.  (Tr. 181-182).  Plaintiff's musculoskeletal examination revealed no changes and Dr. Kauzlarich encouraged Plaintiff to seek treatment from an orthopedist.  (Tr. 181).  Plaintiff asked Dr. Kauzlarich to fill out disability forms, but the doctor responded he could not complete the forms at that time.  Id.  Plaintiff was told to return to the clinic if his symptoms worsened, persisted, or changed.  (Tr. 182).

On November 8, 2007, Plaintiff was examined by Dr. Robert Henderson.  (Tr. 192). Dr. Henderson noted Plaintiff's history of treatment at the Doctor's Walk-In Clinic and reviewed Plaintiff's MRI showing a small disc protrusion.  Id.  After examination, Dr. Henderson diagnosed Plaintiff with a lumbosacral sprain or bulge and placed him on Medrol Dosepak, Voltaren 75 mg, Zanaflex, and Ultram ER.  Id.  Dr. Henderson indicated Plaintiff could work with a fifteen pound lifting restriction and expected Plaintiff's back pain to resolve within one month.  Id.

On April 8, 2008, Plaintiff returned to Dr. Henderson's office.  (Tr. 191).  Dr. Henderson indicated Plaintiff had visited Puerto Rico since his last examination, but had not received therapy during that time and had run out of medication.  Id.  Examination revealed no changes and Dr. Henderson recommended that Plaintiff undergo three weeks of therapy. Id.  Plaintiff's medications were not changed and Dr. Henderson maintained his previous finding that Plaintiff could work with a fifteen to twenty-five pound lifting restriction.  Id.

Plaintiff returned to Dr. Henderson for a third examination on May 7, 2008.  (Tr. 190). Plaintiff reported that physical therapy had worsened his symptoms and inquired about other

4

types of therapy and whether he could receive another MRI.  Id.  Dr. Henderson advised

Plaintiff to undergo a Functional Capacity Evaluation ("FCE") and return in two weeks.  Id.

Dr. Henderson indicated Plaintiff could work with a fifteen pound lifting restriction.  Id.

Plaintiff returned to Dr. Henderson's office on May 21, 2008, but had not yet obtained an

FCE.  (Tr. 189).  Plaintiff inquired again about an MRI, but Dr. Henderson indicated he did

not see a need at that time.  Id.  Dr. Henderson allowed Plaintiff to get a lumbar corset and

reaffirmed the fifteen to twenty-five pound lifting restriction.  Id.

Plaintiff's FCE was conducted on June 2, 2008 by Deane Spivak, an occupational

therapist and certified hand therapist.  (Tr. 250-259).  The FCE found Plaintiff could

frequently lift ten pounds from floor to shoulder level and occasionally lift twenty pounds.

(Tr. 251).  The FCE also found Plaintiff was able to frequently carry twenty pounds.  Id.

Consequently, the FCE found Plaintiff was able to perform work in the light exertional level.

(Tr. 250).  The FCE further indicated that Plaintiff demonstrated an ability to occasionally

climb stairs or ladders, stoop, kneel, crouch, crawl, and use a handcart.  (Tr. 250, 251).

Plaintiff also demonstrated the ability to frequently perform manipulative functions such as

reaching, handling, fingering, and hand grasping.  (Tr. 250, 251, 255).

On June 9, 2008, Plaintiff returned to Dr. Henderson's office.  (Tr. 188).  Dr.

Henderson noted he had received Plaintiff's FCE, which showed good compliance and

limited Plaintiff to light duty work.  Id.  Dr. Henderson stated he "would pretty much adhere to

those restrictions."  Id.  It was further indicated that Dr. Henderson would release Plaintiff to

maximum medical improvement with a six percent whole body disability.  Id.

On December 5, 2008, Plaintiff returned to Dr. Henderson's office.  (Tr. 187).  Plaintiff

inquired whether he could receive another MRI and Dr. Henderson indicated he felt the request was not unreasonable in light of his small disc protrusion.  Id.  Dr. Henderson indicated Plaintiff could work with his previous restrictions and provided Plaintiff with Ultram ER and Zanaflex for his pain.  Id.  This was Plaintiff's last visit of record to Dr. Henderson's office.

On June 2, 2009, a state agency medical expert administered a Residual Functional Capacity ("RFC") review.  (Tr. 194-201).  The review found Plaintiff could frequently lift ten pounds, occasionally lift twenty pounds, stand for about six hours in a normal eight hour work day, sit for about two hours in a normal eight hour work day, and was not limited in his ability to push or pull with his extremities.  (Tr. 195).  The RFC also found Plaintiff could frequently climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 196). The review indicated Plaintiff did not suffer from any manipulative, visual, communicative, or environmental limitations.  (Tr. 197-198)

On June 28, 2009, the Office of Disability Determinations referred Plaintiff to Felix Subervi, Ph.D. for a mental status examination.  (Tr. 202-205).  Plaintiff reported a family history of substance abuse and mental problems including depression, hallucinations, and auditory hallucinations.  (Tr. 203).  Plaintiff also reported he had been raped by a family friend as a child but never told anyone.  Id.  During examination, Plaintiff exhibited normal behavior, normal motor activity, normal speech rate, average eye contact, and a talkative speech quality.  (Tr. 204).  Dr. Subervi also indicated there was no abnormality in Plaintiff's thought content and Plaintiff denied experiencing paranoia, having hallucinations, or acting violently towards others.  Id.  However, Plaintiff indicated he did not trust other people, was

overwhelmed by the thought of entering a narrow staircase, often felt worthless, was forgetful, always felt tired, experienced difficulty sleeping at night, bathed three times per day, had some suicidal ideology, and attempted to commit suicide on one occasion.  Id.  Dr. Subervi noted Plaintiff was oversensitive and presented with a depressed affect.  Id.  Dr. Subervi also noted Plaintiff exhibited questionable judgment, borderline intellectual functioning, fair concentration, an alert level of responsiveness, and a fair level of general insight.  Id.  Plaintiff was diagnosed with major depression with recurrent severe psychotic features and dependence on opium, cannabis, and alcohol.[2]  (Tr. 205).  Dr. Subervi assessed a Global Assessment Functioning ("GAF") score of 50 and recommended that Plaintiff undergo a psychiatric evaluation and seek further treatment.  (Tr. 205).

On October 5, 2009, a medical consultant completed a Psychiatric Review Technique Form ("PRTF").  The form indicated Plaintiff suffered from an affective disorder and substance abuse disorders but found these impairments were not severe.  (Tr. 206). Specifically, the medical consultant found Plaintiff experienced mild restrictions in activities of daily living; mild restrictions in maintaining social functioning; and mild restrictions in maintaining concentration, persistence, or pace.  (Tr. 216).  The consultant also found Plaintiff had not experienced any episodes of decompensation.  Id.  The review further provided that Plaintiff showed no difficulties in understanding, coherency, concentration, speaking, or answering and indicated Plaintiff's activities of daily living appeared more limited by Plaintiff's physical impairments than his mental impairments.  (Tr. 218).

On December 12, 2009, Plaintiff began treatment at the Tampa Family Health Center

---

[2] Dr. Subervi indicated all dependencies were in remission according to Plaintiff.

and was treated there regularly through December of 2010.  (Tr. 328-360).  Plaintiff was treated, for the most part, by Dr. Ailis Marrero.  (Tr. 328-355).  Dr. Marrero noted Plaintiff showed tenderness to palpitation in his lumbar region during each of his musculoskeletal exams.  (Tr. 329, 332, 334, 342, 345).  Dr. Marrero also noted Plaintiff consistently exhibited normal appearance, euthymic mood, normal affect, and normal thought content.  Id.  Plaintiff was diagnosed with a backache, depression, and anxiety during each of his visits.  Id.

On April 2, 2010, an MRI was taken of Plaintiff's spine at Tower Diagnostics Center. (Tr. 350).  The MRI results showed no evidence of a herniated disc, central canal stenosis, or neural-foraminal compromise.  Id.  The results also indicated Plaintiff's vertebral bodies were in normal alignment, there were no compression deformities, and the signal intensity in the vertebral bodies was normal.  Id.

Plaintiff received treatment from Dr. Erick Grana, who administered spinal injections to relieve Plaintiff's back pain.  (Tr. 298-311).  Plaintiff visited Dr. Grana's office on April 29, 2010, May 10, 2010, May 24, 2010, and June 21, 2010.  Id.  Dr. Grana's opinions indicated Plaintiff complained of back pain, myalgias, muscle weakness, muscle cramps, and muscle stiffness but denied joint swelling.  (Tr. 298, 301, 304).  Dr. Grana's reviews also noted Plaintiff denied anxiety, depression, insomnia, and panic attacks.  (Tr. 298, 301, 304). Plaintiff's injections were administered on May 10, 2010.  (Tr. 308-309).  However, Plaintiff's examination subsequent to receiving injections remained largely unchanged from Plaintiff's examination prior to the procedure and Plaintiff continued to complain of back pain.  (Tr. 299, 305).[3]

_____

[3] Dr. Grana's musculoskeletal examinations revealed normal gait, no ataxia, no unsteadiness, normal walking, normal tandem walking, normal heel walking, normal toe walking,

On May 20, 2010, Plaintiff began seeing Dr. Suman Baht for treatment of his depression.  (Tr. 318).  Dr. Baht's initial evaluation indicated Plaintiff appeared very depressed and reported having difficulty sleeping.  (Tr. 318).  The evaluation also indicated Plaintiff complained of seeing things, reported a reluctance to leave his home, reported feeling hopeless and helpless, and showed no interest in personal care.  Id.  Dr. Baht described Plaintiff as irritable and easily excitable.  (Tr. 319).  During examination, Plaintiff demonstrated correct orientation, showed fair judgment and insight, became distracted easily, and demonstrated fair intelligence.  (Tr. 320).  Plaintiff was diagnosed with severe depression, PTSD, and a history of substance abuse.  (Tr. 321).  Plaintiff returned for additional examinations on June 9, 2010, September 9, 2010, and November 8, 2010.  (Tr. 313-316).  During these evaluations, Plaintiff reported experiencing auditory hallucinations, feelings of paranoia, a reluctance to shower, and not eating well.  (Tr. 313, 315, 316).

Plaintiff was referred to Tampa General Hospital's Rehabilitative Services by Dr. Marrero for physical therapy and Plaintiff was seen for one session of therapy on July 1, 2010.  (Tr. 387-390).  The hospital's assessment noted Plaintiff's MRI conducted on April 2, 2010 was negative for any bone or disc defect, but indicated Plaintiff presented as though he suffered from a bulging disc.  (Tr. 389).  The assessment stated Plaintiff would likely benefit from six to ten sessions of therapy, but noted that barriers to success included

---

and negative straight leg.  (Tr. 299, 305).  Examinations of Plaintiff's upper extremities showed no asymmetry, no defects, no joint subluxation, no joint laxity, no scapular winging, no tenderness, normal appearance, full range of motion, and strength assessments of five out of five in all areas.  Id.  Examinations of Plaintiff's spine showed normal alignment, normal lumbar lordosis, no dislocation, no subluxation, and no laxity.  Id.  However, Plaintiff reported tenderness to palpitation and pain with bending.  Id.  Neurological examinations showed normal mood, normal affect, correct orientation, and normal reflexes.  Id.

Plaintiff's previous lack of success with therapy, discrepancies between Plaintiff's complaints and his latest MRI findings, and Plaintiff's seeking social security disability benefits.  Id.  No additional sessions of therapy were conducted as Plaintiff's insurance declined to cover additional sessions.  (Tr. 386).

### C.   Summary of the ALJ's Decision

A claimant is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905.  The ALJ must follow a five step sequential evaluation in determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920.  First, if the claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).  Second, if the claimant does not have any impairment or combination of impairments which significantly limit his ability to do basic work activities, he is not disabled.  20 C.F.R. 404.1520(c); 20 C.F.R. § 416.920(c).  Third, if the claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).  Fourth, if the claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g).  The plaintiff bears the burden of persuasion through

step four, but the burden shifts to the Commissioner at step five.  Bowen v. Yuckert, 482

U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ found Plaintiff met the insured status requirements of the

Social Security Act through December 31, 2012.  (Tr. 17).  At step one, the ALJ found

Plaintiff had not engaged in substantial gainful activity since his alleged onset date of

September 18, 2007.  Id.  At step two, the ALJ found Plaintiff's disc protrusion in the lumbar

region of his spine with complaints of pain and depression constituted severe impairments.

(Tr. 18).  At step three, however, the ALJ found these impairments did not meet or medically

equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

The ALJ found Plaintiff retained an RFC sufficient to perform light work as defined in 20

C.F.R. § 404.1567(b) and 20 C.F.R. 416.967(b).  (Tr. 19).  Specifically, the ALJ found:

> [Plaintiff] has the residual functional capacity to perform [] light
> work as defined in 20 CFR 404.1567(b) and 416.967(b).
> [Plaintiff] has an occasional limitation for bending, stooping,
> crouching, and kneeling but [is] capable of performing routine
> tasks in an environment with a sit/stand option and where a
> strong command of the English [language] is not required.

Id.  At step four, the ALJ found Plaintiff was not able to continue his previous work as an

apartment maintenance worker.  (Tr. 22).  At step five, the ALJ relied on the testimony of an

impartial vocational expert (the "VE") and found a significant number of jobs existed in the

national economy which Plaintiff was able to perform.  Id.  Consequently, the ALJ found

Plaintiff was not disabled as defined in the Social Security Act.  (Tr. 23).

III.     **ANALYSIS**

A.     **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (1997).  Substantial evidence is more than a scintilla but less than a preponderance, Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and includes relevant evidence which a reasonable person would accept as adequate to support the conclusion.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  The district court will affirm a decision by the Commissioner supported by substantial evidence even if the court finds the evidence preponderates against the decision and even if the court would have reached a different conclusion as finder of fact.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote v. Chater, 67 F.3d 1553 at 1560 (11th Cir. 1995).

B.     **Issues on Appeal**

Plaintiff raises three issues on appeal.  (Doc. 26, pp. 5-18).  First, Plaintiff argues the Commissioner improperly rejected Dr. Henderson's treating source opinion in assessing Plaintiff's RFC.  (Doc. 26, pp. 5-10).  Second, Plaintiff argues the Commissioner failed to account for all of Plaintiff's severe impairments in his RFC findings.  (Doc. 26, pp. 11-14).  Finally, Plaintiff argues the Commissioner failed to apply the three part pain standard in

considering Plaintiff's subjective complaints of pain.  (Doc. 26, pp. 15-18).  The Court will address each of these claims.  The Court begins its review by considering Plaintiff's second argument and then proceeds to Plaintiff's first and third arguments.

1.      **Whether the Commissioner failed to incorporate limitations from all of Plaintiff's severe impairments into the RFC assessment**

Plaintiff argues the Commissioner failed to incorporate limitations from all of Plaintiff's severe impairments into his RFC findings.  (Doc. 26, pp. 11-14).  Specifically, Plaintiff asserts the ALJ found that Plaintiff experienced moderate difficulties in maintaining concentration, persistence, or pace but failed to account for these limitations in the hypothetical question he posed to the VE.  (Doc. 26, p. 13).  The Commissioner responds by arguing an ALJ does not need to explicitly reference limitations in concentration, persistence, or pace where an ALJ limits a claimant to simple and routine tasks and medical evidence suggests the claimant can perform such activities.  (Doc. 28, p. 9).  The Court finds the ALJ's hypothetical question did fail to account for Plaintiff's mental impairments; however, there is substantial evidence showing this omission amounted to no more than harmless error.

When a claimant presents a colorable claim of mental impairment, an ALJ must complete a Psychiatric Review Technique Form ("PRTF"), or incorporate the form's mode of analysis into his decision.  <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1214 (11th Cir. 2005).  This mode of analysis includes an evaluation of how a claimant's mental impairments impact four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3), 20 C.F.R. § 416.920a(c)(3).  The PRTF is used at steps two and three of the sequential evaluation

process to rate the severity of a claimant's mental impairment and is distinct from the more detailed RFC assessment conducted at steps four and five.  SSR 96–8p,1996 WL 374184, at *4 (S.S.A. 1996).  However, the Eleventh Circuit has held that the limitations identified in a claimant's PRTF should be considered in determining the claimant's RFC.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011); Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 871 (11th Cir. 2011).  An ALJ may account for moderate limitations in maintaining concentration, persistence, or pace by including them in a hypothetical question posed to a VE.  Winschel, 631 F.3d at 1180.  However, the hypothetical question must include all of the claimant's impairments for the VE's testimony to constitute substantial evidence.  Wilson, 284 F.3d at 1227.  Errors may be harmless if they do not prejudice the claimant.  Battle v. Astrue, 243 F. App'x 514, 522 (11th Cir. 2007) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

The Commissioner cites Winschel for the proposition that an ALJ's hypothetical restricting a claimant to simple and routine tasks or unskilled work adequately accounts for moderate restrictions in concentration, persistence, or pace where medical evidence demonstrates the claimant is able to perform such activities despite his limitations.  (Doc. 28, p. 9).  Notably, the ALJ's hypothetical question posed to the VE in this case did not contain a restriction to simple tasks or unskilled work and does not appear to otherwise account for his PRTF findings.  (Tr. 19, 43).  Consequently, the VE's testimony in response to the ALJ's hypothetical did not constitute substantial evidence in support of the finding that Plaintiff was not disabled.  However, the Court notes there is additional VE testimony of record in this case which suggests the ALJ's omission amounted to no more than harmless

14

error.  In particular, Plaintiff's counsel was given the opportunity to examine the VE and

posed the following question:

> Now I'd like for you to assume a hypothetical individual, and I'm
> going to keep some of the same limitations that we have, the
> light work with a sit/stand option, again, with the ability to, to walk
> around.  This person would be -- have limitations for frequent
> handling and fingering, they could frequently reach, frequently
> balance.  They would be limited to not only routine, but simple,
> repetitive tasks as well which would need to be encompassed by
> a GED reasoning level one.  Okay.  And the Person would need
> to work, actually, in proximity or around others versus working on
> his own.  Now with those limitations, could the hypothetical
> individual perform any of the jobs you listed?

(Tr. 45).  The VE responded:

> [t]he only area that would give me concern would be a reasoning
> level one.  Most of the simple, routine, repetitive tasks would be
> above a reasoning level one.  Typically, you're going to find them
> at two.  If someone is not even at a reasoning level one, they're
> pretty much unable to do even activities of daily living.  They're
> pretty limited as far as being able to concentrate and make
> routine decisions.  So that really doesn't equal simple, repetitive
> routine tasks in a work place.  So if I look only at the reasoning
> level one, I would say they would not be able to.  If I look at the
> simple routine, repetitive tasks the three jobs would meet that.

(Tr. 45-46).  The Court finds that in light of the VE's testimony on examination by Plaintiff's

council, Plaintiff was not prejudiced by the omission of a restriction to simple tasks or

unskilled work in the ALJ's original hypothetical.

Additionally, the Court believes a restriction to occupations with a GED reasoning

level of one was not necessary to account for Plaintiff's moderate functional limitations in

this case and agrees with the VE's statements indicating Plaintiff was capable of performing

work requiring a GED reasoning level of two.  Courts have previously found that a limitation

to performing simple tasks is not inconsistent with the performance of occupations requiring

a GED reasoning level of two.  See Mansoory v. Astrue, No. 3:08-CV-72-J-TEM, 2009 WL 804645 at *10 (M.D. Fla. Mar. 26, 2009); Strickland v. Astrue, No. 2:10-CV-306-FTM-DNF, 2011 WL 4048985 at *9 (M.D. Fla. Sept. 13, 2011); Anderson v. Astrue, No. CIV.A. 2:11-00046-N, 2011 WL 3843683 at *5 (S.D. Ala. Aug. 30, 2011).  Accordingly, the Court does not believe a restriction to occupations requiring a GED reasoning level of one was necessary to account for Plaintiff's moderate limitations in concentration, persistence, or pace in this case.

In sum, the Court finds the ALJ's failure to limit Plaintiff to performing simple tasks or unskilled work in his hypothetical posed to the VE amounted to no more than harmless error.  Harmless errors are those which do not prejudice the plaintiff.  See Diorio, 721 F.2d at 728 (finding an ALJ's error was harmless because it did not impact the final determination of disability).  Indeed, several courts have similarly held that an ALJ's failure to include certain limitations in a hypothetical posed to the VE amounted to no more than harmless error where the VE provided testimony that those limitations would not affect the plaintiff's occupational base.  See Gutierrez v. Astrue, No. 2:10-CV-720-FTM-SPC, 2011 WL 4836874 at *6 (M.D. Fla. Oct. 12, 2011) (finding an ALJ's failure to account for the plaintiff's moderate difficulties in maintaining concentration, persistence, or pace was harmless error where the VE provided testimony that a limitation to simple, routine, repetitive tasks would not affect the plaintiff's ability to perform the duties of a clerical cashier or assembly person); see also Jones v. Astrue, No. 3:09-CV-431-J-25TEM, 2010 WL 3603933 at *11 (M.D. Fla. Sept. 9, 2010) (finding plaintiff's moderate difficulties in maintaining concentration, persistence, or pace were adequately addressed in the plaintiff's examination of the VE who testified such

restrictions would not entirely erode the base of sedentary work).  In the instant case, Plaintiff's counsel posed a hypothetical to the VE which adequately accounted for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  The VE indicated Plaintiff's ability to perform the occupational duties of a production assembler, solderer, or photo finisher would not be affected by a restriction to simple, routine, and repetitive tasks.  (Tr. 45-46).  Accordingly, the Court finds the ALJ's failure to incorporate this limitation into his RFC findings amounted to no more than harmless error and does not warrant remand.

**2.    Whether the ALJ improperly rejected the treating source opinion of Dr. Henderson**

Next, Plaintiff argues the ALJ improperly rejected the medical opinion of Dr. Henderson, Plaintiff's treating physician.  (Doc. 26, pp. 5-18).  Plaintiff asserts the ALJ rejected Dr. Henderson's opinion by failing to include limitations from the FCE Summary dated June 2, 2008 into his RFC findings.  (Doc. 26, pp. 9-10).  Specifically, Plaintiff asserts the ALJ rejected the FCE's limitation to only frequent performance of manipulative functions such as reaching, handling (gross manipulation), fingering (fine manipulation), and hand grasping.  (Doc. 26, p. 10).  Plaintiff also asserts the ALJ rejected the FCE's limitation to only occasional performance of postural functions such as stooping, kneeling, crouching, crawling, and climbing stairs.  Id.  Plaintiff contends the ALJ was required to provide good cause for not incorporating these limitations into his RFC findings because Dr. Henderson acknowledged the FCE in an opinion dated June 9, 2008 which provided he "would pretty much adhere" to its restrictions.  (Tr. 188).  The Commissioner responds by arguing the ALJ's failure to recite the FCE's limitations verbatim does not amount to a rejection of Dr. Henderson's medical opinion and the additional limitations cited by Plaintiff have little or no

17

effect on the occupational base for light work.  (Doc. 28, p. 5).  After reviewing the decision

of the ALJ, the evidence of record, and the applicable law, the Court finds the ALJ did not

err in his treatment of Dr. Henderson's medical opinion.

Generally, an ALJ should give more weight to the opinion of a treating source than

the opinion of a non-treating source.  20 C.F.R. § 404.1527(c)(2); 20 C.F.R. 416.927(c)(2).

A treating source's opinion merits controlling weight when it is supported by medically

acceptable clinical or laboratory diagnostic techniques and it is not inconsistent with other

substantial evidence of record.  Id.  The Court does not agree with Plaintiff's contention that

the ALJ rejected Dr. Henderson's treating source opinion in assessing Plaintiff's RFC.

Indeed, in restricting Plaintiff to light work, the ALJ specifically stated he gave "significant

weight" to Dr. Henderson's opinion that Plaintiff could perform light duty work with only a six

percent whole body impairment.  (Tr. 21).  It is undisputed that Dr. Henderson did not

perform the FCE or prepare the FCE Summary.  Further, as the Commissioner argues, Dr.

Henderson's statement that he "would pretty much adhere" to the FCE's restriction to light

duty work, does not amount to an endorsement of every finding therein.  For example, while

almost all of Dr. Henderson's opinions of record placed lifting restrictions on Plaintiff, none of

these opinions discussed additional manipulative or postural limitations.  (Tr. 187-192).

Finally, Plaintiff bases his objection, in part, on the assertion that Dr. Henderson's

restriction to "light duty" work per the FCE is not necessarily akin to "light work" as defined

by the Social Security Regulations and cites SSR 96-5p for the proposition that adjudicators

should not assume medical sources are aware of the SSA's definitions for exertional terms.

(Doc. 26, p. 9).  However, this concern appears unwarranted in the instant case because the

FCE Summary indicated Plaintiff was capable of performing light work as defined by the Dictionary of Occupational Titles (the "DOT") and included a table of definitions for the various exertional levels used by the SSA in reviewing disability claims.[4]  (Tr. 250, 259). Accordingly, the undersigned finds the ALJ did not reject Dr. Henderson's treating source opinion in assessing Plaintiff's RFC.

To the extent Plaintiff argues the ALJ erred by failing to discuss the FCE findings in his decision, the Court does not agree.  While an ALJ is not required to discuss every piece of evidence of record in rendering his decision, an ALJ must provide reasoning for rejecting any significant probative evidence.  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). As the undersigned does not find the FCE to be significant probative evidence, it was not necessary for the ALJ to discuss or indicate the weight given to the FCE.

Plaintiff contends the FCE imposed "far greater limitations than those given as part of the RFC." (Doc. 26, p.10).  As the FCE placed both postural and manipulative limitations on Plaintiff, the Court will examine each.  The Court first considers the extent to which the postural limitations provided in the FCE differ from the RFC.  The FCE found Plaintiff could occasionally climb stairs or ladders, stoop, kneel, crouch, and crawl.  (Tr. 251).  The RFC stated Plaintiff "ha[d] an occasional limitation for bending, stooping, crouching, and kneeling." (Tr. 19).  Plaintiff points out that the ALJ failed to assign any limitation on his ability to climb stairs and ladders.  Plaintiff is correct, however, there is no indication that any of the occupations identified by the VE would require climbing of stairs or ladders.  With

---

[4] The SSA classifies occupations as sedentary, light, medium, heavy and very heavy (20 CFR 404.1567 and 416.967). These terms have the same meaning as they have in the exertional classifications noted in the DOT.  SSR 00-4p, 2000 WL 1898704, at *3

respect to the remaining postural limitations, Plaintiff's contention that the FCE's limitation to occasional stooping, kneeling, crouching, and crawling is somehow more restrictive than the ALJ's "occasional limitation" for the same is not persuasive.  It appears Plaintiff reads the RFC's "occasional limitation for bending, stooping, crouching, and kneeling" as being akin to frequent performance of the postural functions.  (Doc. 26, p. 10).  The Court does not agree with this interpretation.  Rather, the Court interprets the ALJ's findings as restricting Plaintiff to occasional performance of the postural activities in question.  Indeed, this reading appears to be more consistent with other instances in which courts have used the phrase "occasional limitation."  See e.g. Turner v. Astrue, No. 8:08-CV-65-T-TBM, 2009 WL 804676 at *3 (M.D. Fla. Mar. 26, 2009) (in which the phrase "occasional postural limitations" refers to "limitations for occasional climbing, balancing, stooping, kneeling, crouching, and crawling").

The Court also considers the extent to which the RFC's manipulative limitations differ from those found in the FCE.  The FCE indicated Plaintiff could frequently perform the manipulative functions of handling, fingering, simple hand grasping, firm hand grasping, fine manipulation, and gross manipulation with both hands.  (Tr. 251).  The RFC did not provide for any manipulative limitations.  (Tr. 19).  The FCE included a table of these findings with each entry accompanied by the comment, "[n]o deficit observed."  (Tr. 255).  Also included in the FCE was a table conveying the results of a grip strength test, which examined six strength criteria in each of Plaintiff's fingers.  (Tr. 258).  Notably, the FCE assessed Plaintiff's grip strength of five out of five in each of the entries and indicated that Plaintiff showed a normal range of motion in each area.  Id.  Plaintiff also received scores of more

than four out of five in each of the fourteen tests assessing strength in his shoulders, elbows, and wrists.  Id.

In any event, there is no indication that these manipulative limitations would have affected Plaintiff's ability to perform the jobs identified by the VE.  To the contrary, counsel for Plaintiff posed a hypothetical to the VE including the FCE's restrictions to frequently performing manipulative functions.  (Tr. 45).  The VE did not indicate the frequent limitation on handling, fingering, and reaching would prevent Plaintiff from performing any of the jobs identified.  Id.  Accordingly, the ALJ did not err in failing to discuss the FCE or by failing to adopt its findings verbatim in the RFC.

> **3.    Whether the Commissioner failed to apply the three part pain standard to Plaintiff's subjective complaints of pain**

Finally, Plaintiff argues the Commissioner failed to apply the three part pain standard in evaluating Plaintiff's subjective complaints of pain.  (Doc. 26, pp. 15-17).  Specifically, Plaintiff asserts the ALJ failed to address whether there is objective medical evidence confirming the severity of Plaintiff's pain or whether an objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. (Doc. 26, p. 17).  The Commissioner responds by arguing the ALJ did apply the pain standard in evaluating Plaintiff's subjective complaints, but found Plaintiff's testimony was not credible.  (Doc. 28, pp. 11-14).  The Court finds the ALJ appropriately considered Plaintiff's pain testimony and provided reasons supported by substantial evidence for discounting Plaintiff's testimony.

The Eleventh Circuit has articulated that an ALJ must consider a three part pain standard when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  Foote, 67 F.3d at 1560.  The standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  Id.  An ALJ may decide not to credit a claimant's subjective complaints of pain, but must articulate specific and adequate reasons for doing so.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The reasons provided must be supported by substantial evidence and "take into account and evaluate the record as a whole."  Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 834 (11th Cir. 2011) (quoting McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986)).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Foote, 67 F.3d at 1561–62; Cannon v. Bowen, 858 F.2d 1541,1545 (11th Cir. 1988).

In the instant case, the ALJ explicitly acknowledged the pain standard in beginning his assessment of Plaintiff's RFC and even recited its three parts.  (Tr. 19).  As the Plaintiff notes, the ALJ later referred to Plaintiff's diagnosed lumbar strain and MRI findings showing a disc protrusion in the lumbar region of his spine.  (Tr. 21).  Plaintiff does not dispute that this satisfies the first step of the pain standard.  (Doc. 26, p. 17).  However, Plaintiff asserts the ALJ failed to address the second step and determine whether objective medical evidence confirmed the severity of Plaintiff's pain or whether the disc protrusion could reasonably be expected to cause the alleged pain.  (Doc. 26, p. 17).  The Court cannot

22

agree.  In fact, the ALJ explicitly stated:

> I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 20).  This section appears to be a clear application of the third part of the pain standard and immediately precedes the ALJ's discussion of Plaintiff's lumbar strain.  Accordingly, the Court finds the ALJ did not fail to apply the three part pain standard in considering Plaintiff's subjective complaints of pain.

The Court also finds the ALJ did not fail to provide adequate reasoning for rejecting Plaintiff's pain testimony.  In rejecting Plaintiff's subjective complaints, the ALJ referred to Dr. Kauzlarich's opinion dated October 9, 2007.  (Tr. 21).  The ALJ noted Dr. Kauzlarich's statements that Plaintiff was observed walking, sitting, and moving from place to place with no apparent pain or restrictions.  Id.  The ALJ also referred to Dr. Kauzlarich's indications that Plaintiff appeared to be malingering and that Plaintiff's examination did not match his complaints.  Id.  The ALJ then noted Dr. Kauzlarich's refusal to fill out disability forms for the Plaintiff on October 29, 2007.  The ALJ further acknowledged Dr. Henderson's restriction to light duty work, assessment of a six percent whole body impairment rating, and indication that Plaintiff was able to travel to and from Puerto Rico for Christmas.  Id.  Accordingly, the Court finds the ALJ's decision not to credit Plaintiff's subjective complaints of pain was supported by substantial evidence and the ALJ did not err in applying the three part pain standard to Plaintiff's subjective complaints of pain.

## IV.     CONCLUSION

For the forgoing reasons, the Commissioner's decision is hereby **AFFIRMED**.  The Clerk is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __27th__ day of August, 2012.


_____

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

24